**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

JUAN DIEGO MENA,

         Petitioner,

    v.

SERGIO ALBARRAN, et al.,

         Respondents.

Case No.  26-cv-04749

**ORDER GRANTING EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER**

[Re: ECF No. 3]

Before the Court is Petitioner Juan Diego Mena's *ex parte* application for temporary restraining order ("TRO").  ECF No. 3 ("App.").  Counsel for Petitioner has attached an accompanying declaration to the application.  ECF No. 3-1 ("Decl.").  On May 19, 2026, Petitioner filed a Petition for Writ of Habeas Corpus against Respondents Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Acting ICE Director Todd Lyons, Secretary of the United States Department of Homeland Security ("DHS") Markwayne Mullin, Acting Attorney General of the United States Todd Blanche, and Field Office Director of the San Francisco ICE Field Office Orestes Cruz.  ECF No. 1 ("Pet.").  Petitioner filed the TRO application early the next morning of May 20, 2026.  *See* ECF No. 3.

For the following reasons, the TRO application is GRANTED as set forth below.

**I.    BACKGROUND**

According to the TRO application, accompanying declaration, and petition, Petitioner is a 20-year-old asylum seeker from El Salvador who entered the United States with his mother and sister when he was eight years old, in June 2013.  He was detained briefly but released into the United States on his own recognizance after United States Customs and Border Protection determined that he was not a flight risk or a danger to the community pursuant to 8 U.S.C.

§ 1226(a). Upon his release, Petitioner's mother timely filed her asylum application, listing Petitioner as a derivative. These applications remain pending, and their individual asylum hearing is scheduled for May 24, 2027. Separately, Petitioner's mother, who was the victim of a crime in the United States, filed a U-Visa Application which qualified Petitioner to apply as a U-Visa derivative applicant. Those applications also remain pending.

Since the family's arrival, brief detention, and subsequent release in 2013, Petitioner has made good faith efforts to comply with his supervision requirements, and Petitioner has never missed an immigration court hearing. Petitioner was arrested in 2023, as a juvenile. Pursuant to Welfare & Institutions Code Sections 827 and 831, the records of those proceedings are confidential and cannot be released to third parties without juvenile court permission. A juvenile delinquency adjudication does not constitute a conviction for immigration purposes, regardless of the nature of the offense. *See Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 922 n.3 (9th Cir. 2007). Petitioner was arrested as an adult in 2025, which resulted in a misdemeanor charge under California Penal Code section 25400(a)(2)-M for carrying concealed firearm on the person. The court in that case imposed a three-month diversion program that required him not to possess and forfeit all weapons and complete ten hours of community service.

On October 10, 2025, three plaintiffs filed a class-action complaint challenging ICE's re-detention policy under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559. *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, ECF No. 38 (N.D. Cal. filed Oct. 10, 2025). The plaintiffs in that case filed a motion to "stay" the re-detention policy pending final judgment on their claims and a motion for provisional class certification. On December 19, 2025, the district court issued an order granting the *Garro Pinchi* plaintiffs' motions for provisional class certification and to stay agency action. *Garro Pinchi v. Noem,* No. 25-cv-05632-PCP, 2025 WL 3691938, at *34 (N.D. Cal. Dec. 19, 2025). The court certified the following class: "All noncitizens in the jurisdiction of the San Francisco ICE Field Office who (1) entered or will enter the United States without inspection; (2) have been or will be charged with inadmissibility under 8 U.S.C. § 1182 and have been or will be released from DHS custody; and who (3) are in removal proceedings under 8 U.S.C. § 1229a, including any § 1229a proceedings that have been dismissed

2

where the dismissal is not administratively final; and (4) are not subject to detention under 8 U.S.C. § 1226(c)." *Id.* at *12. The court further held that the re-detention policy is likely unlawful because it is arbitrary and capricious in violation of the APA. *Id.* at *25. After finding that the rest of the factors favoring preliminary relief were satisfied, the court issued an order staying Respondents' re-detention policy, effective immediately. *Id.* at *31–32. Under that order, Respondents may not implement their policy of re-arresting and re-detaining class members, unless Respondents first make an individualized determination that there are materially changed circumstances as to the class member's dangerousness or flight risk.  Petitioner is a member of the *Garro Pinchi* class.

On May 19, 2026, Petitioner was detained by United States Immigration and Customs Enforcement ("ICE") officers during a mandatory ICE check-in.  Petitioner challenges the lawfulness of his detention.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017).  Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits–a lesser showing than likelihood of success on the merits–then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.  A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no

longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.    DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a TRO without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition.

Petitioner has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1030–36 (N.D. Cal. 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to similar circumstances). His release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk nor a danger to the community, and Petitioner has a strong interest in remaining at liberty unless he no longer meets those criteria. On this record, no evidence indicates that Petitioner no longer meets that criteria, and thus Petitioner has a strong likelihood of success on the merits.

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that he has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "'[T]he public has a strong interest in upholding procedural protections against unlawful detention,' and the Ninth Circuit has recognized that '[t]he costs to the public of immigration detention are "staggering."'" *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (second alteration in original) (first quoting *Ortiz Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *2 (N.D. Cal. Aug. 23, 2020), then quoting *Hernandez*, 872 F.3d at 996). Meanwhile, the potential harm to the government is minimal: The Government, at most, faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The Government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). The balance of hardships thus tips decidedly in Petitioner's favor.

A TRO immediately releasing Petitioner is appropriate to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663-DJC, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a TRO requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo). Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Application is GRANTED as detailed below.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Petitioner's application is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2) Respondents are ORDERED to release Petitioner immediately from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker.  Respondents are ENJOINED from removing Petitioner from this judicial district, and, if they have already transferred him, are ORDERED to return him to this judicial district.  Respondents are PROHIBITED from removing Petitioner from the United States until these proceedings have terminated.

(3) During the pendency of the habeas proceedings, Respondents are ENJOINED AND RESTRAINED from moving Petitioner from the jurisdiction.

(4) Respondents are ORDERED TO SHOW CAUSE in-person at a hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on June 2, 2026, why a preliminary injunction should not issue.  Respondents SHALL file a response to Petitioner's motion by no later than May 25, 2026.  Any reply SHALL be filed by May 28, 2026.  The assigned Judge may modify this schedule as appropriate.

(5) This Order shall remain in effect until 5:42 a.m. on June 3, 2026.

Dated:  May 20, 2026, at 5:42 a.m.

_____
BETH LABSON FREEMAN
United States District Judge

6