**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JUAN DIEGO MENA,<br><br>          Petitioner,<br><br>     v.<br><br>SERGIO ALBARRAN, et al.,<br><br>          Respondents. | Case No.  26-cv-04749-BLF<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Re:  ECF No. 3] |

Petitioner Juan Diego Mena filed a petition for writ of habeas corpus against Respondents Field Office Director of the San Francisco Immigration and Customs Enforcement ("ICE") Office Sergio Albarran, Acting ICE Director Todd Lyons, Secretary of the United States Department of Homeland Security ("DHS") Markwayne Mullin, Acting Attorney General of the United States Todd Blanche, and Field Office Director of the San Francisco ICE Field Office Orestes Cruz (collectively, the "Government").  ECF No. 1 ("Pet.").

On May 20, 2026, Mr. Mena filed an *ex parte* motion for a temporary restraining order ("TRO").  ECF No. 3 ("Mot.").  The same day, the Court issued a TRO requiring the Government to immediately release Mr. Mena and enjoining and restraining it from re-detaining him without notice and a pre-deprivation hearing before a neutral decisionmaker.  ECF No. 4 ("Order").  The Court also ordered the Government to show cause why a preliminary injunction should not issue. *Id.*  The Government filed a brief in opposition, ECF No. 13 ("Opp."), and Mr. Mena filed a reply in support of his motion, ECF No. 16 ("Reply").  The Parties jointly requested that the Court submit the motion for a preliminary injunction without a hearing, ECF No. 15, so the Court vacated the hearing, ECF No. 17.  *See* Civil L.R. 7-1(b).  Finding good cause, the Court extended the TRO in force for an additional 14 days, through June 17, 2026, at 5:42 a.m.  ECF No. 17; *see*

*also* Fed. R. Civ. P. 65(b)(2).  For the reasons set forth below, Mr. Mena's motion for a preliminary injunction is GRANTED.

## I.　BACKGROUND

Mr. Mena is a 20-year-old asylum seeker from El Salvador who entered the United States with his mother and sister when he was eight years old, in June 2013.  Pet. ¶¶ 5–6.  He was detained briefly but released into the United States on his own recognizance after United States Customs and Border Protection determined that he was not a flight risk or a danger to the community pursuant to 8 U.S.C. § 1226(a).  *Id.* ¶ 1.  Upon his release, Mr. Mena's mother timely filed her asylum application, listing him as a derivative.  *Id.* ¶ 7.  These applications remain pending, and their individual asylum hearing is scheduled for May 24, 2027.  *Id.*  Separately, Mr. Mena's mother, who was the victim of a crime in the United States, filed a U-Visa Application which qualified Mr. Mena to apply as a U-Visa derivative applicant.  *Id.* ¶ 8.  Those applications also remain pending.  *Id.* ¶ 8.

Since the family's arrival, brief detention, and subsequent release in 2013, Mr. Mena has made good faith efforts to comply with his supervision requirements and has never missed an immigration court hearing.  *Id.* ¶ 7.  Mr. Mena was arrested as a juvenile.[1]  Pursuant to Welfare and Institutions Code Sections 827 and 831, the records of those proceedings are confidential and cannot be released to third parties without juvenile court permission.  *Id.* ¶ 9.  Mr. Mena was arrested again as an adult in 2025, which resulted in a misdemeanor charge under California Penal Code section 25400(a)(2)-M for carrying concealed firearm on the person.  *Id.* ¶ 10.  The court in that case imposed a three-month diversion program that required Mr. Mena not to possess and forfeit all weapons and complete ten hours of community service.  *Id.*  Mr. Mena has a partner and a minor daughter.  *Id.* ¶ 34.  He is also very close with his sister and his mother.  *Id.*

On May 19, 2026, Mr. Mena was required to report to the ICE San Francisco office along with his sister and mother.  Declaration of Juan Diego Mena, ECF No. 16-2 ("Mena Decl.") ¶ 3.

---

[1] While the Parties appear to agree that Mr. Mena was arrested as a juvenile, the Parties do not agree on the year of that arrest. The Government asserts that Mr. Mena was arrested in 2016. Declaration of Deportation Officer Rocio Gallardo-Soriano, ECF No. 13-1 ("Gallardo-Soriano Decl.") ¶ 8.  The habeas petition states that Mr. Mena was arrested in 2023.  Pet. ¶ 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

As part of his ICE check-in, Mr. Mena was called in for an interview, which he attended with his attorney, Jazmin Preciado. *Id.* ¶ 5. When asked about Mr. Mena's arrest record, Ms. Preciado advised the officer that one arrest took place when Mr. Mena was a juvenile (and thus was sealed), and the other was so minor that Mr. Mena qualified for a misdemeanor diversion program. Declaration of Jazmin Preciado, ECF No. 16-1 ("Preciado Decl.") ¶¶ 5–6. The officer directed Ms. Preciado to leave the room for the remainder of the interview, despite her protests. *Id.* ¶¶ 7–8. The officer then advised Mr. Mena that he "had enough" to detain him and would "figure out where they were going to transfer" him to. Mena Decl. ¶ 7. Mr. Mena's arrest, detention, and transfer to a detention center in Southern California followed. *Id.* ¶¶ 11–14.

## II. LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "[W]hen the Government is the opposing party," the final two factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

### A. Likelihood of Success on the Merits

As to likelihood of success on the merits, Mr. Mena argues that his arrest and detention violated the court's order in *Garro Pinchi v. Noem*, which temporarily stayed the Government's policy of re-arresting and re-detaining class members without an individualized determination that there are materially changed circumstances as to the class member's dangerousness or flight risk. Mot. at 5–6 (citing *Garro Pinchi v. Noem,* 813 F. Supp. 3d 973 (N.D. Cal. Dec. 19, 2025)); *see also* Reply at 10. Mr. Mena also contends that his detention violated the Fifth Amendment Due Process Clause. Mot. at 6–12; Reply at 3–7. The Court finds that Mr. Mena's argument as to due process is dispositive and thus begins with the Constitutional issue.

### 1. Due Process

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

### a. Mr. Mena's Protected Liberty Interest

The threshold issue is whether Mr. Mena has a constitutionally protected liberty interest such that the Due Process clause applies. Mr. Mena urges the Court to find that because he was released on his own recognizance under 8 U.S.C. § 1226(a), Pet. ¶ 6, he has a liberty interest in remaining out of custody, Mot. at 7. The Government contends that under the controlling statutory scheme, Mr. Mena is subject to mandatory detention. Opp. at 2–4. The Government also acknowledges that this Court has previously concurred with the vast majority of courts in the Ninth Circuit (and hundreds of other decisions around the Country) in disagreeing with the Government's argument. *See* Opp. at 2 (citing *Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125 (N.D. Cal. Sept. 18, 2025)); *see also* Opp. at 5–8.

8 U.S.C. § 1225 provides that an alien who "arrives in the United States," or "[is] present" in this country but "has not been admitted," is "an applicant for admission." 8 U.S.C. § 1225(a)(1). 8 U.S.C. § 1225(b)(1)(A)(i) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." § 1225(b)(1) applies to an alien who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). 8 U.S.C. § 1225(b)(2)(A) provides that "[s]ubject to [scenarios that do not apply here], in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt

entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." While "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)[,] [i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a), where an alien is "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General "may continue to detain the arrested alien," "may release the alien" on "bond," or "may release the alien" on "conditional parole." 8 U.S.C. § 1226(a)(1)–(2).

The Court acknowledges a circuit split with respect to the applicability of § 1225(b)(2)(A) versus § 1226(a) to noncitizens who were initially detained and later released into the interior of the United States. Four circuits have rejected the Government's interpretation of the statutory scheme, finding that § 1226(a), rather than § 1225(b)(2)(A), governs the detention of noncitizens "who are already present in the United States and are determined not to be a flight risk or danger to the community . . . while their removal proceedings are pending." *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 70 (2d Cir. 2026); *see also Castañon-Nava v. Dep't of Homeland Sec.*, No. 25-3050, 2026 WL 1223250 (7th Cir. May 5, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891 (6th Cir. May 11, 2026). Two circuit courts have adopted the Government's position, holding that § 1225(b)(2)(A) governs the detention of such noncitizens. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). An appeal is pending before the Ninth Circuit on this same issue. *See Rodriguez Vasquez v. Bostock, et al.*, No. 25-6842 (9th Cir.).

After careful consideration of the competing arguments, the Court concludes that "a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *6 (N.D. Cal. Oct. 3, 2025); *see also Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too

United States District Court
Northern District of California

5

does [the noncitizen] have a liberty interest in remaining out of custody on bond."); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."). To the extent the Government insists that Mr. Mena lacks a right to process beyond what is provided by statute, Opp. at 5, "the Government relies on cases where non-citizens sought additional procedure to challenge their *exclusion*[,]" *Cordero Pelico*, 2025 WL 2822876, at *6, and so are, accordingly, unpersuasive.

### b. Procedural Due Process

Mr. Mena argues that his re-detention without a hearing before a neutral decisionmaker would violate his procedural due process rights. Mot. at 7–10. The Government contends that Mr. Mena's criminal history gives rise to changed circumstances that justify detention without a due process hearing. Opp. at 4–5.

In *Mathews v. Eldridge*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). The Supreme Court identified three factors relevant to the due process inquiry—(1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335. The Ninth Circuit has recognized that many courts have applied the *Mathews* test in considering due process challenges in the immigration context. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022). This Court joins others in the Ninth Circuit in applying the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. *See, e.g.*, *Garro Pinchi*, 792 F. Supp. 3d 1025, 1033–36 (N.D. Cal. 2025); *Omer G.G. v. Kaiser*, 815 F. Supp. 3d 1098, 1110–11 (E.D. Cal. 2025).

United States District Court
Northern District of California

### i.      Private Interest

As to the first *Mathews* factor, the Court finds that Mr. Mena has a substantial private interest in remaining out of immigration custody because he has been released pending civil removal proceedings.  *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Mr. Mena has a significant interest in remaining in his home and with his family—including his young daughter—outside of immigration custody.  *See Garro Pinchi*, 792 F. Supp. 3d at 1033.  "His detention denies him that freedom."  *Omer G.G.*, 815 F. Supp. 3d at 1111.

### ii.      Risk of Erroneous Deprivation

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would guard against.  Where, as here, "there is a substantial liberty interest at stake . . . the Due Process Clause requires a pre-deprivation bond hearing where the government bears the burden of proving by clear and convincing evidence that petitioner is a flight risk or danger to the community."  *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (collecting cases).  Accordingly, the Court disagrees with the Government's contention that a "bond hearing is appropriately held post-detention."  Opp. at 8; *see Domingo v. Kaiser*, No. 25-cv-05893-RFL, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing . . . he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.").  The Court concludes that the second *Mathews* factor favors Mr. Mena.

### iii.      Government Interest

As to the third *Mathews* factor, the Government has a minimal interest in detaining Mr. Mena without a hearing.  The Government contends that Mr. Mena's criminal history justifies his detention.  Opp. at 4–5; *see also* Gallardo-Soriano Decl. ¶¶ 8–9, 11 (describing Mr. Mena's arrest history and concluding that "his criminal history . . . amounted to a material change in circumstances such that Petitioner poses a danger to the community).  The Court is unpersuaded.

"[A]bsent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process."  *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).  Courts in the

United States District Court
Northern District of California

Ninth Circuit have found that arrests without convictions do not typically give rise to the urgency required to justify a post-deprivation hearing. *See, e.g.*, *Singh v. Bondi*, No. 26-cv-0598, 2026 WL 747104, at *3 (W.D. Wash, Mar. 17, 2026) ("An arrest, standing alone, is not evidence of criminal activity in breach of Petitioner's release conditions."); *see also Larios v. Albarran*, No. 25-cv-08799-AMO, 2025 WL 3043391, at *8 (N.D. Cal. Oct. 31, 2025) (finding that an arrest did not constitute changed circumstances sufficient to merit re-detention without a hearing). Stale conduct is particularly unlikely to give rise to the kind of exigency necessary to abrogate due process. In *Guillermo M. R.*, for instance, ICE learned of the petitioner's arrest the day after it occurred but waited more than six weeks to detain him, which, the Court concluded, was evidence of a lack of urgency, 791 F. Supp. 3d at 1036. *See also K.G.M.Q v. Bondi*, No. 26-cv-00506-TL, 2026 WL 962609, at *8 (W.D. Wash. Apr. 9, 2026) (finding that "Respondents cannot reasonably argue that Petitioner's [criminal offenses and probation violation] *urgently* required arrest," where "DHS waited until five years after his probation violation, and roughly six years after his most recent conviction, to detain him") (internal citations omitted).

On the record before the Court, no exigency exists. For one thing, a juvenile delinquency adjudication does not constitute a conviction for immigration purposes, regardless of the nature of the offense. *See Vargas-Hernandez v. Gonzales*, 497 F.3d 919, 922 n.3 (9th Cir. 2007). And according to the evidence submitted by the Government, Mr. Mena's juvenile arrest is nearly a decade old. Gallardo-Soriano Decl. ¶ 8. With respect to Mr. Mena's pending criminal case, it is unclear how a ten-month-old arrest, which has resulted in a charge for which Mr. Mena is presumed innocent, might give rise to the kind of exigency that would justify abrogating due process. The Government cites *Matter of Guerra*, 24 I. & N. Dec. 37, 41 (BIA 2006), for the proposition that a finding of danger to the community does not require a conviction. Opp. at 5. Perhaps, but the Government's authority is inapposite. As the Government notes in its brief, the dangerousness finding in *Matter of Guerra* was made by an Immigration Judge. *See* 24 I. & N. Dec. at 41. Here, by contrast, the deportation officer independently determined that Mr. Mena was dangerous. *See* Gallardo-Soriano Decl. ¶ 11 ("*I* determined . . . that Petitioner poses a danger to the community.") (emphasis added). As the Government fails to offer any persuasive evidence of

8

United States District Court
Northern District of California

urgency, the Court finds that the third *Mathews* factor weighs in favor of Mr. Mena.

\*　　\*　　\*

Having determined that each of the *Mathews* factors favors Mr. Mena, the Court concludes that Mr. Mena has shown a likelihood of success on the merits of his claim that he is entitled to a pre-deprivation hearing before a neutral decisionmaker before his re-detention.  At such a hearing, due process requires that the Government must prove by clear and convincing evidence that he poses a flight risk or danger to the community.  *See Rodriguez Diaz*, 53 F.4th at 1199 (summarizing Ninth Circuit opinions—and calling them into question on separate grounds— which hold that due process requires that the government to bear the burden of proving, by clear and convincing evidence, that a noncitizen poses a risk of flight or dangerousness before he can be detained).

### c.  Substantive Due Process

Mr. Mena argues that re-detention would violate his substantive due process rights.   Mot. at 10–11.  Because the procedural due process issue is dispositive, the Court need not address the substantive due process claim.  *See Tellez v. Bondi*, No. 25-cv-08982-PCP, 2025 WL 3677937, at \*4 (N.D. Cal. Dec. 18, 2025).

### 2.  *Garro Pinchi*

Mr. Mena also contends his arrest and detention were unlawful under the court's order in *Garro Pinchi v. Noem*.  *See* Mot. at 5–6 (citing *Garro Pinchi*, 813 F. Supp. 3d 973 (N.D. Cal. 2025)).  The Court likewise need not reach this issue.

### B.    Remaining *Winter* Factors

Mr. Mena has demonstrated that the remaining *Winter* factors tilt sharply in his favor.  As to the second *Winter* factor, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  As to the third and fourth *Winter* factors, which merge in this case against the Government, "[t]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz*

*v. Kaiser*, No. 25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citation omitted). While the Court is mindful that the burden remains on Mr. Mena as the moving party to show that the *Winter* factors support injunctive relief, it is also notable that the Government declined to discuss any of the remaining factors.

### C.    Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to the Government resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

### D.    Transfer and Removal

The Government argues that even if the Court grants preliminary relief, the Court should not enjoin the Government from transferring or deporting Mr. Mena.

#### 1.    Transfer

Mr. Mena requests an injunction prohibiting his removal. *See* Proposed Order, ECF No. 3-2 ¶ 4. The Government contends that the Court cannot enjoin removal and any relief granted by the Court must allow for Mr. Mena's re-detention upon a final order of removal. Opp. at 8–11.

The Court agrees with the Government. Detention during a 90-day "removal period" after the entry of a final order of removal is mandatory. *See* 8 U.S.C. § 1231(a)(1)–(2). After this period expires, ICE has discretion to continue detaining the alien or to release pending removal. 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) did not authorize the Government to indefinitely detain a removable alien, 533 U.S. at 689. A detention period of less than six months is presumptively reasonable. *Id.* at 701. For detention to continue

10

beyond six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*

If Mr. Mena becomes subject to a final order of removal, the Government may detain him for the sole purpose of executing removal. In this event, the Government must provide a bond hearing in the timeframe required by law. In such an event, the Court would also lack jurisdiction to enjoin Mr. Mena's removal under 8 U.S.C. § 1252(g), which provides in relevant part that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added).

### 2. Transfer

Mr. Mena also requests an injunction prohibiting his transfer from the district during the pendency of these proceedings to maintain the Court's jurisdiction. Mot. at 1; Proposed Order ¶ 4. The Government contends that the Court cannot prohibit the transfer of Mr. Mena outside of the district. Opp. at 11. "[B]ecause 'jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change,'" *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (citation omitted), the Court will not enjoin the Government from transferring Mr. Mena out of the district in the event of his lawful detention. *See Vaskanyan v. Janecka*, No. 25-cv-01475-MRA-AS, 2025 WL 2014208, at *6 (C.D. Cal. June 25, 2025).

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Mr. Mena's motion for preliminary injunction is GRANTED as follows:

    a. Respondents are ENJOINED against detaining Mr. Mena and ENJOINED AND RESTRAINED from re-detaining Mr. Mena without notice and a pre-deprivation hearing before a neutral decisionmaker.

    b. The preliminary injunction is DENIED to the extent it seeks other relief.

    c. If Mr. Mena becomes subject to a final order of removal and Mr. Mena receives

United States District Court
Northern District of California

notice of such order, Respondents may detain Mr. Mena for the sole and limited purpose of executing removal pursuant to 8 U.S.C. 1231(a)(2)(A). In such an event, Respondents SHALL provide a bond hearing in the timeframe required by law.

(2) This Preliminary Injunction SHALL remain in effect during the pendency of this case, unless modified by the Court.

(3) The Parties SHALL submit a stipulation proposing a briefing schedule for the underlying habeas petition on or before **June 18, 2026.**

Dated:  June 1, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12